**Kenneth D. McDONALD, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1081S289.

Supreme Court of Indiana.

Sept. 2, 1982.

Judith T. Cheek, Columbus, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Arson, Ind.Code § 35–43–1–1(a) (Burns 1979) and sentenced to twenty (20) years imprisonment. This direct appeal raises the following issues:

(1) Whether the evidence is sufficient to support the conviction.

(2) Whether the trial court erred in not reducing Defendant's conviction and sentence in light of his codefendant's plea bargain agreement and the imposition thereon of a substantially lesser penalty.

\*  \*  \*  \*  \*  \*

## ISSUE I

The evidence most favorable to the State discloses that on the evening of July 9, 1980, in North Vernon, Indiana, fire completely destroyed a building belonging to Mrs. Roark. An investigation revealed that the fire had been intentionally set and that Defendant and another, Paul Badgett, were the perpetrators. Defendant challenges the sufficiency of the evidence in four separate arguments.

### A.

Defendant first contends that the destroyed building was not a "dwelling," citing *Simmons v. State*, (1955) 234 Ind. 489, 499, 129 N.E.2d 121, 128. The term "dwelling" as used in the Arson statute is defined in Ind.Code § 35–41–1–2 (Burns 1979):

> "'Dwelling' means a building, structure, or their enclosed space, permanent or temporary movable or fixed, that is a person's home or place of lodging."

Defendant argues as follows:

> "As established at trial, no one was residing in the building at 506 4th Street in North Vernon, Indiana. (TR pp. 46, 54, 57, 142, 147) nor were utilities connected to the building to make it habitable (TR p. 55) and in fact, it had not been a dwelling for some time (TR pp. 54, 57). Thus, no person's life or safety was threatened by the fire which occurred." Appellant's Brief at 11.

This argument ignores the evidence, which supports a finding that the building was a dwelling. The building was a four room house, counting the bathroom. The utilities were connected although not operational. During the period immediately prior to the fire, Mrs. Roark's son had stayed at the house to paint and to remodel it. The house required some new windows, new floors, carpets, and paneling. The son testified that he had been there "about every other day" and "about every night, I guess." On occasion he stayed there with his fiance. He also stated that the house was furnished with "A stove, a refrigerator, a bed, \* \* \*." In addition to these things, the fire investigator was able to identify a stereo receiver and turntable in the debris and stated that the son had resided at the house until "a few days of the fire."

The son related that on July 3, 1980, Defendant had threatened to shoot him and to burn the house down. About a week before the fire the son had witnessed Defendant kicking the door in and breaking windows at the house. Another State's wit-

ness testified that two or three days before the fire, Defendant had driven by the house, shooting a .22 caliber gun into it, and another State's witness related that on the evening of the fire Defendant had repeated the shooting. The son stated that he was not staying at the house on the night of the fire because of "trouble" with Defendant.

From the foregoing recited evidence the jury was warranted in finding that the owner's son had been using the house as his dwelling on a regular basis and that Defendant by his actions and threats had driven him from it.

### B.

■ Defendant next contends that there was no proof that he committed the act of starting the fire. He reasons that fires are presumed to arise from a providential cause, unless the evidence proves otherwise. In this case the evidence substantially proved otherwise.

The State's expert witness testified that the fire had occurred when someone saturated the floor of the house with a flammable liquid and ignited it. All natural or accidental causes were ruled out.

We have related above the circumstantial evidence of Defendant's pre-fire threats. The record also contains evidence of guilt from witnesses at the scene and from Defendant's actions after the fire.

Badgett, driver of the getaway car, who was also charged, testified that he had dropped Defendant at the house. Defendant had kicked the door in and entered. The witness had seen smoke emanating from the house and Defendant had come running out a few minutes later. The group in the car had fled. Defendant's ex-wife, who was also in the car, testified that Defendant had taken her "Bic" cigarette lighter before he entered the house.

Defendant and the witnesses returned to the scene, and Defendant re-entered the house. Badgett drove away, leaving Defendant behind, upon seeing another vehicle approach. At that point Badgett and Defendant's ex-wife heard an explosion, which

Defendant later told them was caused by paint cans.

After the fire, Defendant made several separate and unrelated admissions. He told Badgett that he had burned the house down using a "Bic" lighter. He also admitted his guilt to a cellmate at the Jennings County Jail. About four or five days after the fire Defendant encountered Mrs. Roark's son and his fiance on a street in North Vernon and stated:

"A. He just yelled across the street and said, how do you like your mom's house, how I remodeled it, wall to wall black?"

The sum total of the evidence distinguishes this case from those cited by defendant. In *McAllister v. State*, (1974) 161 Ind.App. 644, 648, 317 N.E.2d 200, 203, *reh. denied*, (1974) Ind.App., 319 N.E.2d 866, the court found no evidence placing the defendant at the scene of the fire; here there is such evidence. In *Griffin v. State*, (1980) Ind.App., 413 N.E.2d 293, the court reversed where the record showed only presence at the scene and an opportunity to set the fire; here the record contains substantial additional evidence of Defendant's conduct before and after the fire. The evidence as related above is sufficient to prove that Defendant committed the act of arson. *Biggerstaff v. State*, (1982) Ind., 432 N.E.2d 34, 36; *Ingram v. State*, (1981) Ind., 426 N.E.2d 18, 19. *See Loy v. State*, (1982) Ind., 436 N.E.2d 1125.

### C.

■ Defendant next contends that he did not have the requisite intent to commit arson. Defendant testified that he had consumed twenty (20) tequilla sunrises, an alcoholic beverage, on the day of the fire. Other witnesses, who provided Defendant's alibi, substantiated this claim of extreme voluntary intoxication; however, the testimony of the State's witnesses, as related above, would have allowed the jury to find that Defendant was sufficiently in control of himself to start the fire and to return to the scene a second time. *See Sund v. State*, (1974) 162 Ind.App. 550, 554, 320 N.E.2d

790, 793. Additionally, these witnesses testified that Defendant was not "drunk" and that he was capable of walking on his own and was not stumbling. We will not re-determine the credibility of these witnesses. *Price v. State*, (1980) Ind., 412 N.E.2d 783, 784; *Stout v. State*, (1974) 262 Ind. 538, 540, 319 N.E.2d 123, 124.

### D.

 Defendant argues that there was insufficient evidence to prove that he aided and abetted someone, ostensibly Badgett, to commit the crime. Inasmuch as the evidence clearly supported Defendant's conviction as a principal, a theory of accessorial culpability is moot thus rendering inconsequential any issue with respect to accessory liability.

### ISSUE II

After Defendant's trial, Badgett, his codefendant, pled guilty to Criminal Mischief and received a one year suspended sentence. Defendant contends that the trial court erred in not reducing his sentence to more nearly parallel that of his codefendant.

In his Argument Defendant recognizes the following rule:

> "In similar situations, we have passed upon the sentence meted out to principals and accessories. It may be gleaned from those decisions that when one defendant proceeds to trial and his accomplice pleads guilty, sentences need not be identical. This is by reason of the special nature of the guilty plea and because such plea does not result in a judicial determination on the merits. *See Tessely v. State*, (1978) 267 Ind. 445, 370 N.E.2d 907; *Combs v. State*, (1973) 260 Ind. 294, 295 N.E.2d 366. In short, there is no requirement of consistency." *Morgan v. State*, (1981) Ind., 419 N.E.2d 964, 969.

Defendant acknowledges that this rule applies to his case, but asks us not to apply it, apparently because the accomplice, by pleading guilty to criminal mischief, admitted acts sufficient to render him guilty as the principal. The record does not support this assertion; nor does it support Defendant's argument that he has been penalized for invoking his Sixth Amendment right to a trial, whereas his accomplice waived the right and consequently reaped the benefit of a lesser sentence. The record shows that the State offered one defendant a plea agreement and compelled the other to trial, which it had a right to do. The State has no obligation to plea bargain. We find no error in the trial court's refusal to reduce the sentence, which is adequately supported by its finding of aggravating circumstances.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.