MICHAEL RAY COMBS *v.* STATE OF INDIANA.

[No. 1171S340.  Filed May 3, 1973.]

*John G. Bunner*, of Evansville, for appellant.

*Theodore L. Sendak*, Attorney General, *Robert F. Colker*, Assistant Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction of second degree burglary after a trial by jury in the Vanderburgh Circuit Court, the Honorable William H. Miller presiding. Appellant bases his appeal on two grounds: (1) The evidence was insufficient because the State failed to prove the specific ownership of any articles taken in the burglary, and (2) the verdict is contrary to law since the theory upon which the State proceeded in this case was that the appellant acted as an accessory to the burglary (IC 1971, 35-1-29-1, being Burns § 9-102) and the principle to the crime entered a plea only to the lesser offense of malicious trespass.

The evidence of the State in this case included the testimony of Charles Gubler, the President of the Garvin Park Little League in Evansville. He testified that on the 16th of May, he and a group of volunteers had spent the day cleaning up the ball field at Garvin Park in preparation for the Little League season. They had also painted and cleaned a building located at the park which served as a combination storage, concession and office structure. The building was described as a one story cinder block structure with a metal door on one end and several "window" type arrangements which could be opened up in order to sell refreshments from the concession part of the building. A wooden waist-high fence surrounded the flat roof of the building and a covering roof was constructed above that. Metal fencing had been attached between this second roof and the primary roof in order to close in this otherwise open area on top of the structure. This platform was used as a kind of an announcement area and score board. The only means of access to it was a trap door which led from the storage area below to the roof area. The inside of the structure itself was divided into three rooms: a concession room, a storage room and a small office room. There was an air conditioner set in a hole in the wall between the supply and office rooms.

Mr. Gubler testified that on May 16th he was the last to leave the Little League building at about 5:00 or 5:15 p.m.

When he left he locked the door to the building and made sure the concession windows were bolted down. He stated that the interior of the building had been cleaned and was in order when he left.

At about 9:45 p.m. that same night Mr. Gubler returned to the Little League park to pick up a transistor radio he left behind in the office section of the building. As he approached the door he heard what he described as "ransacking noises" from inside. He also noticed that two of the three floodlights were out, but the padlock on the door was still locked and intact. Gubler unlocked the padlock and pushed the door open. Inside he saw the figure of one person crawl through the hole in the office wall in which the air conditioner was usually placed. The air conditioner had been removed from the hole and was now resting on the floor of the office. Gubler stated that he chased after this person but he was not able to stop him or identify him. The person crawled through to the supply room and Gubler ran outside, locking the door again with the padlock.

Once outside Gubler climbed up a row of bleachers which was set up next to the building. From the top of the bleachers he could look over on to the top of the building and as he did so he saw two people lying on the roof next to the trap door that lead down into the supply room. Gubler had a flashlight with him and he shined it on the two figures. He testified that one of the persons looked up at him and he identified that person as being the appellant.

At about this time three other persons were crossing the ballfield as a short cut to their homes on the other side. Gubler called to them and they climbed up the bleachers to watch the two men on the roof while he went to call the police. One of these three testified at the trial and identified appellant as being one of the men on the roof.

Before climbing down from the bleachers Gubler called to the two men and told them that if they went down into the building again and cleaned up the mess they had made he

would not call the police. The two then opened the trap door and went down into the building.

Shortly thereafter Officers Redman and Koewler of the Evansville Police Department arrived at the field. By this time Gubler had told the men inside the building that he was not going to let them out, and they began to kick open one of the windows. Officer Redman went around to the window side of the building while Officer Koewler and Mr. Gubler opened the front door. As they did so appellant kicked out the side window and attempted to flee. After a struggle he was subdued by Officer Redman. The other intruder was apprehended by Gubler and Koewler in the building. A search of appellant by Officer Redman produced a pair of wire cutters, a knife and a piece of lead pipe with tape wrapped around one end.

Gubler further testified that he inspected the building after the incident and that, in addition to the removed air conditioner, he found the drawers on the desk had all been pulled out and between five and ten dollars in change was missing from a drawer in a popcorn machine. A sandwich, which had been in the refrigerator, was found half eaten on the desk and a drink had been taken from a soda machine. Gubler also stated that the fencing which ran around the top of the building had been cut and there were apparent pry marks on the trap door.

Mr. Guy Andress testified that he was Commissioner of the Evansvile Little League Corporation and that the building at Garvin Park was the property of that corporation.

Appellant's first contention is that his conviction should be reversed because the State failed to prove the ownership of any articles missing from the building. At the outset we must repeat that when a conviction is appealed on the grounds of insufficiency of the evidence it is not the function of this Court to weigh the evidence nor resolve questions of credibility of witnesses, but to look to that

evidence and the reasonable inferences therefrom which support the verdict of the jury. *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558.

The burglary statute and affidavit with which we are concerned here requires the State to establish two elements: (1), a breaking and entering into a structure other than a dwelling, (2) with the intent to commit the felony of theft therein. IC 1971, 35-13-4-4, being Burns § 10-701, and IC 1971, 35-17-5-3, being Burns § 10-3030. The evidence concerning the cut wiring, the pry marks on the trap door and the "ransacking noises" from within the Little League building clearly establishes a breaking and entering. Moreover this Court has consistently held that where there are facts which allow reasonable inferences as to the intruder's specific intention once in the building the second element of this offense will be sufficiently established. *Faulkner* v. *State* (1973), 260 Ind. 82, 292 N. E. 2d 594; *Hobbs* v. *State* (1969), 253 Ind. 195, 252 N. E. 2d 498. There was clear evidence presented here that an air conditioner had been removed from the wall, that the drawers of a desk had been searched, that a money drawer and a refreshment machine had been opened and an indetermined amount of change taken. We believe these facts lead to the reasonable inference that the intruder's intention in breaking into the building was a theft of its contents.

Appellant asserts that the State's case failed to sufficiently establish the ownership of any property missing from the building. A reading of Burns § 10-701(b), however, reveals that the statute does not require that property actually be carried away before the statute is violated. This element of the statute is satisfied when the intent of the intruder is established, and does not necessitate a completed felony. Furthermore, IC 1971, 35-17-5-13, being Burns § 10-

3040 (12), defines owner as used in § 10-3030 as one, other than the actor, who has possession of the property involved. Evidence at trial clearly established that the Evansville Little League Inc., through Charles Gubler, was in possession of the property within the Little League building. *Thomas* v. *State* (1970), 255 Ind. 131, 263 N. E. 2d 158.

Appellant's second contention deals with the accessory aspect of his conviction. Appellant introduced in his defense at trial evidence which indicated that the other person at the building that night had plead guilty in city court to the misdemeanor of malicious trespass. He asserts that since only one person was seen in the building (before Gubler invited them inside to clean it up) his conviction must rest on an accessory theory rather than as a principle. Although the affidavit charging the appellant names him as the principle of the crime, the evidence submitted at the trial and the use of accessory instructions to the jury establishes that the prosecution did in fact proceed on the theory that appellant was an accessory to the burglary under IC 1971, 35-1-29-1, being Burns § 9-102, which provides:

> "Every person who shall aid or abet in the commission of a felony, or shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment, or affidavit, tried and convicted in the same manner as if he were the principle, either before or after the principle offender is charged, indicted or convicted; and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principle."

Appellant contends that since the principle of the crime was found guilty only of malicious trespass he cannot be convicted as an accessory to the greater offense of second degree burglary. Appellant's contention would seem to rest on the foundation that there must be a relationship between the outcome of the accessory's case and the outcome of the principle's case; that the accessory's conviction is linked to the principle's. In the case at bar therefore even though the

evidence at his trial might clearly establish a second degree burglary, appellant asserts that there still exists a legal bar to his conviction on that offense because of the plea of his principle to a lesser one.

An overview of this, however, reveals that appellant's theory is only partially supportable. For example, it is generally held that an accessory may be tried before his principle. *Walker* v. *State* (1965), 246 Ind. 386, 204 N. E. 2d 850. Also that an accessory may be tried and convicted, when the proof of the underlying crime is sufficient, even though the principle was never tried, or even when the identity of the principle is never disclosed. *Feldstein* v. *U.S.*, 429 F. 2d 1092 (9th Cir. 1970). In these instances therefore it appears that the outcome of the accessory's case need not be dependent upon or liked to the outcome of the principle's case. On the other hand the accepted rule in the situation where the principle has been tried and acquitted is that an accessory's conviction cannot be sustained. *McCarty* v. *State* (1873), 44 Ind. 214; *U.S.* v. *Shuford*, 454 F. 2d 772 (4th Cir. 1971).

Apparently therefore any theory of legally mandated consistent relationships between the outcome of a principle's case and the outcome of an accessory's case is somewhat narrower than appellant's broad assertion. It is clear that an accessory's conviction need not always be irrevocably tied to his principle's. The rule which we can perhaps glean from these holdings is that where there has been two separate judicial determinations on the merits of the respective cases, and where they are contradictory, the law will impose a consistency to their findings.

This is not to hold, however, that the appellant here should prevail in his contention that his conviction must be made consistent with his principle's. As was stated above the principle in this case was not acquitted of any wrongdoing, or found guilty of some lesser offense,

after a trial on the merits, but rather entered a plea of guilty to a charge of malicious trespass. We believe that in the area of mandated consistency between principle's conviction and accessory's conviction there is a recognizable and legitimate difference between the assumptions which may arise from an acquittal or a finding of guilt on a lesser charge after a trial on a greater, and the acceptance of a plea of guilty by a court.

Although a guilty plea is recognized as a conviction it has certain aspects to it which make it fundamentally different from the usual process when an accused is convicted. *Boykin* v. *Alabama* (1969), 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274. A guilty plea many times arises from a bargain of mutual benefit which is reached between a defendant and the prosecution. On the one hand the accused confers a benefit on the prosecution by agreeing not to contest a certain charge and also by agreeing to waive many fundamental and important rights which he possesses and which, if he insisted on pressing, would make the burden of the prosecutor more difficult. In return for these waivers the prosecution often times agrees to waive certain options it possesses; one of which is that it will not attempt to convict defendant of a more serious offense. *Santobello* v. *New York* (1971), 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427.

It seems therefore that, although courts have recognized a necessity for consistency in certain situations in this area, they have done so because of certain assumptions implicit in a finding by a court after a trial on the merits. However, these same assumptions do not arise, nor are the same forces at work, upon an entrance of a guilty plea. When the principle is found guilty by a court after a trial on the merits of a lesser offense than the one originally charged, an assumption may be made that the State failed to adequately carry its burden on the principle's greater offense, or in the case where the principle is acquitted altogether, the assumption may be made that the State failed to establish an under-

lying crime at all. On the other hand in the situation where a plea to a lesser offense is accepted by a court it cannot be presumed to be a finding of an acquittal of the greater because of the special nature of the plea bargain that often times underlies it. As pointed out above the very nature of a plea bargain presupposes a restraint by the prosecutor on the punishment to be extracted from the accused.

Indeed the record in this case reveals that the plea bargaining process entered into the finding of the court of the principle's guilt of the misdemeanor of malicious trespass. Here the prosecutor, apparently because of the principle's age and prior record, agreed not to try the principle on a second degree burglary if he would enter a plea to malicious trespass. It cannot be presumed from this, as appellant's theory would have us do, that the prosecutor would have failed to establish the existence of second degree burglary. On the contrary the presumption might be made that, because of the nature of the plea bargaining process, the prosecution deliberately chose not to press its proof as strongly as it might have. Moreover, the evidence introduced at appellant's trial here was clearly sufficient to prove the underlying crime. We believe therefore that these two convictions do not demonstrate the legal contradiction which may arise under certain circumstances in the trials of accessories and principles and therefore this accessory is not entitled to a reduction in sentence. The judgment of the trial court is affirmed.

Arterburn, C.J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 295 N. E. 2d 366.