**James GAMES, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 185 S 7.

Supreme Court of Indiana.

March 14, 1989.

George K. Shields, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant-appellant, James R. Games, was found guilty of murder, conspiracy to commit murder, robbery, and conspiracy to commit robbery. The death penalty was ordered.

In this direct appeal, defendant presents eleven issues for our review:

1. filing of death sentence count after omnibus date;
2. constitutionality of Indiana's death penalty statute;
3. denial of defendant's Special Motion for Discovery;
4. denial of defendant's Motion for Additional Questions on Juror Questionnaire;
5. trial court control and alleged prosecutorial misconduct;
6. admissibility of photographic evidence;
7. admissibility of letter written by defendant;
8. allowing substantive testimony from defendant's accomplice before revealing to the jury the details of the accomplice's negotiated plea agreement;
9. imposition of death penalty as disparate from accomplice's sentence;
10. consideration of mitigating circumstances at sentencing; and
11. constitutionality of death penalty as vindictive justice.

The facts adduced at trial show that on July 13, 1983, the eighteen-year-old defendant and his fourteen-year-old accomplice, Earl Tillberry, plotted a robbery scheme whereby they intended to lure Thomas Ferree, an acquaintance of the defendant, into taking them to his home, where they planned to hit him on the head, tie him up, take his stereo, and then escape in his car. Defendant contacted Ferree, and Ferree agreed to meet the defendant and Tillberry at a market near defendant's home. The evidence indicates that Ferree was a homosexual and anticipated sexual favors from the conspirators. In the early evening of July 14, 1983, Ferree met the defendant and Tillberry as planned and drove them to his home. While the defendant and Tillberry were alone in the kitchen, Tillberry told defendant that Ferree was "making passes" at him. Expecting that Ferree would

ask Tillberry to accompany him (Ferree) upstairs to take a shower, defendant urged Tillberry to consent and then to stab Ferree in the back as they walked up the stairs. Ferree made the anticipated request of Tillberry, and the plan was put into motion. While following Ferree up the stairs, Tillberry pulled a concealed folding knife from his pants and stabbed Ferree in the back. Ferree turned around, fell, and landed in a prone position at the bottom of the stairs. The defendant then attacked the victim, punched him with his fists and then pulled the knife out of his back and stabbed him repeatedly while the victim struggled. Defendant ordered Tillberry to provide him with some other weapons, and Tillberry complied. Using an assortment of knives, a meat cleaver and a fireplace poker, defendant continued to stab and bludgeon the victim. When defendant and Tillberry were apparently startled by a buzzing alarm, they took the victim's car and quickly left the scene. The victim apparently died shortly thereafter as a result of the multiple stab wounds to his head and back.

### 1. Timeliness of Filing Death Sentence Count

The State filed its four-count information on July 18, 1983. At the initial hearing the following day, the trial court set September 26, 1983, as the omnibus date. On October 11, 1983, six days before the then-scheduled trial date, the State filed an Information for Death Sentence, to which defendant filed written objections. Following presentation of arguments at a pre-trial conference, the trial court overruled the defendant's objections but expressly granted defendant the opportunity to "file any motions to dismiss directed toward the information for death sentence." After motions for continuance on behalf of both parties, jury trial finally commenced on February 27, 1984.

■ Defendant claims that reversible error was committed when the trial court accepted the State's information for death sentence filed after the omnibus date, in violation of Ind.Code § 35-34-1-5. Defen-

dant claims the following harm resulted thereby: a) he received the death sentence; b) he was forced to seek a continuance, which gave the State additional time to locate witnesses and complete key plea agreements; and c) his tactical preparation was harmed.

The State contends that Ind.Code § 35-34-1-5 does not apply to informations requesting imposition of the death penalty and, alternatively, that defendant suffered no actual prejudice.

Ind.Code § 35-34-1-5 provides:

(a) An indictment or information which charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney at any time because of any immaterial defect, including:

(1) Any miswriting, misspelling, or grammatical error;

(2) Any misjoinder of parties defendant or offenses charged;

(3) The presence of any unnecessary repugnant allegation;

(4) The failure to negate any exception, excuse, or provision contained in the statute defining the offense;

(5) The use of alternative or disjunctive allegations as to the acts, means, intents, or results charged;

(6) Any mistake in the name of the court or county in the title of the action, or the statutory provision alleged to have been violated;

(7) The failure to state the time or place at which the offense was committed where the time or place is not of the essence of the offense;

(8) The failure to state an amount of value or price of any matter where that value or price is not of the essence of the offense; or

(9) Any other defect which does not prejudice the substantial rights of the defendant.

(b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:

(1) Thirty [30] days if the defendant is charged with a felony; or

(2) Fifteen [15] days if the defendant is charged only with one or more misdemeanors; before the omnibus date. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

(c) Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare his defense. [IC 35–34–1–5, as added by Acts 1981, P.L. 298, § 3; 1982, P.L. 204, § 21; P.L. 320–1983, § 13.]

We agree with the State that the amendment procedure and limitations prescribed by section 5 do not preclude informations requesting imposition of the death penalty filed subsequent to the initial charging information.

The State may seek to enhance the sentence by seeking the death penalty pursuant to Ind.Code § 35–50–2–9(a), which requires that such request be filed "on a page separate from the rest of the charging instrument." This enhancement request is analogous to that prescribed when the State seeks to have a person sentenced as a habitual offender pursuant to Ind. Code § 35–50–2–8. Discussing the relationship between a previous statute authorizing the amendment of a charge, this Court in *State v. Hicks* (1983), Ind., 453 N.E.2d 1014, 1018, held that the amendment statute did not preclude the State

from seeking, after the filing of the original information, sentence enhancement under the habitual offender statute. In *Howard v. State* (1978), 268 Ind. 589, 377 N.E.2d 628, *cert. denied* (1978), 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708, we held that permitting an information to be amended to charge habitual offender status did not constitute the charging of a separate crime and did not prejudice the substantial rights of the appellant. The holding in *Howard* was applied in *Gilmore v. State* (1981), 275 Ind. 134, 415 N.E.2d 70, which permitted the delayed addition of a habitual offender count:

> An information may be amended at any time before, during or after trial so long as it does not prejudice the substantial rights of the defendant. Since the habitual criminal statute does not impose punishment for a separate crime but provides a more severe penalty for the crime charged and since defendant was given adequate time to prepare a defense, an amendment to add the habitual criminal count did not prejudice the substantial rights of the defendant.

*Id.* at 137, 415 N.E.2d at 73. *See also Barnett v. State* (1981), Ind., 429 N.E.2d 625; *Radford v. State* (1984), Ind., 468 N.E.2d 219.

 While the prescribed statutory filing sequence is not here applicable, a belated death penalty request will be improper if it operates to prejudice a defendant's substantive rights. On this question, we find particularly significant that, following the filing of the death penalty request, trial did not occur for more than four months. Continuances were sought and granted. Defendant claims resulting harm in the following particulars: He received the death sentence; the resulting additional time permitted the State to enhance its evidence, and the death penalty request impaired trial preparation, diligence and tactics.

The element of prejudice to defendant's substantial rights is not shown by the fact that he is ultimately convicted or receives the penalty sought. The issue is whether defendant's opportunity for a fair trial was detrimentally affected by the denial of pro-

cedural opportunities for the ascertainment of truth to which he otherwise would have been entitled. We conclude that the belated filing of the death penalty information and the ensuing four-month delay did not impair defendant's opportunity for a fair trial in this case.

The fact that the State's evidence may have been strengthened is not inconsistent with the ascertainment of truth. In addition, we are not convinced that the delay operated to cause any improper imposition upon defendant's trial tactics.

Defendant cites *Trotter v. State* (1981), Ind., 429 N.E.2d 637; *Gillie v. State* (1984), Ind., 465 N.E.2d 1380; and *Humphrey v. State* (1978), 268 Ind. 597, 377 N.E.2d 631, in support of his argument that the amended information prejudiced his substantial rights. However, these cases did not involve indictments or informations amended to request habitual offender sentence enhancement or imposition of the death penalty.

We find no error on this issue.

### 2. Constitutionality of Death Penalty Statute

■ Defendant advances numerous arguments in support of his contention that the Indiana statutory scheme providing for the imposition of the death penalty is *per se* unconstitutional.

#### A.

Defendant argues that the Indiana statutory scheme allows the death penalty to be inflicted in an arbitrary, capricious or "freakish" manner by vesting unbridled discretion in the sentencing authority. This Court has addressed this issue on numerous occasions and consistently held that "our statutory and procedural scheme limits the imposition of death sentences in such a manner as to assure that they will not be inflicted in an arbitrary or capricious manner, and upon that basis the provisions thereof for sentences of death violate neither the Eighth Amendment to the Constitution of the United States nor its counterpart in our State Constitution, Article I, Sec. 16." *Brewer v. State* (1981), 275 Ind.

338, 357–58, 417 N.E.2d 889, 900, *cert. denied* (1982), 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384. *See also Resnover v. State* (1984), Ind., 460 N.E.2d 922, *cert. denied* (1984), 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160; *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, *cert. denied* (1983), 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699; *Williams v. State* (1982), Ind., 430 N.E.2d 759, *appeal dismissed* (1982), 459 U.S. 808, 103 S.Ct. 33, 74 L.Ed.2d 47; *Fleenor v. State* (1987), Ind., 514 N.E.2d 80, *cert. denied* (1988), —— U.S. ——, 109 S.Ct. 189, 102 L.Ed.2d 158.

Defendant also points out that the Indiana statutory scheme fails to require that the death sentence be predicated on a finding, beyond a reasonable doubt, that the mitigating circumstances are outweighed by the totality of the aggravating circumstances. This omission, he contends, renders our statutory scheme violative of the eighth amendment (cruel and unusual punishment clause) and fourteenth amendment (due process clause) of the United States Constitution and the counterparts in the Indiana Constitution, article I, section 16 and section 12. This Court rejected essentially the same argument in *Spranger v. State* (1986), Ind., 498 N.E.2d 931, *cert. denied* (1987), 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536; *Moore v. State* (1985), Ind., 479 N.E.2d 1264, *cert. denied* (1985), 474 U.S. 1026, 106 S.Ct. 583, 88 L.Ed.2d 565; *Daniels v. State* (1983), Ind., 453 N.E.2d 160. We have reconsidered our conclusions in light of defendant's contentions and authorities, but we find no argument presented here that has not already been fully considered.

#### B.

■ Defendant challenges Ind.Code § 35–50–2–9(e) because it permits the sentencing judge to impose the death penalty despite a contrary jury recommendation. He argues that this provision is violative of both the due process clause of the fourteenth amendment and the double jeopardy clause of the fifth amendment of the United States Constitution and their counterparts in the Indiana Constitution, article I,

section 12 and section 14. We first observe that defendant is not in a position to raise this issue as the jury in this case recommended the death sentence. Notwithstanding this fact, the Supreme Court of the United States has decided this issue adversely to defendant's position. *Spaziano v. Florida* (1984), 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (statutory scheme permitting judge to override jury recommendation not violative of eighth amendment or fifth amendment double jeopardy clause). We have also decided this issue adversely to defendant's position. *See Schiro, supra; Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 94, *cert. denied* (1986), 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349; *Thompson v. State* (1986), Ind., 492 N.E.2d 264, 268. Defendant has provided us with no authority or rationale that has not already been considered by this Court.

### C.

■ Defendant contends that the Indiana death penalty statute is unconstitutional because it allows the prosecutor unbridled discretion as to whether to seek the death penalty. *See* Ind.Code § 35–50–2–9(a). We have previously considered and rejected this argument in *Bieghler, supra; Resnover, supra;* and *Williams, supra. See also Smith v. State* (1987), Ind., 516 N.E.2d 1055, 1066, *cert. denied* (1988), —— U.S. ——, 109 S.Ct. 330, 102 L.Ed.2d 347. We have reconsidered our conclusions in light of defendant's arguments, yet we adhere to our view that the procedures dictated by statute subsequent to filing the death penalty request prevent the arbitrary and capricious infliction of the death penalty. *Resnover,* 460 N.E.2d at 929.

### D.

■ Defendant asserts that Indiana's statutory death penalty provisions fail to comply with our State's manifest legislative policy because of an absence of a procedure affording adequate appellate review. This argument is virtually identical to that considered and rejected by this Court in *Resnover,* 460 N.E.2d at 929–30.

We disagree with the contention that legislative intent mandates the promulgation of special rules for the review of death penalty cases. We have repeatedly held that our standard rules of appellate review allow for the requisite meaningful appellate review of death penalty cases. *See Bieghler, supra; Moore, supra; Lowery v. State* (1985), Ind., 478 N.E.2d 1214, *cert. denied* (1986), 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900; *Smith v. State* (1984), Ind., 465 N.E.2d 1105.

We therefore reject defendant's contention that the Indiana death penalty scheme is unconstitutional.

### 3. Denial of Discovery Motion

Defendant filed a motion seeking discovery of all police reports filed since October 1, 1977, detailing homicide investigations in the State of Indiana that resulted in the filing of murder charges. The primary purpose was to facilitate defense counsel's presentation of evidence to the trial court in support of his constitutional argument that the death penalty was not being sought or applied in a uniform manner throughout our criminal justice system. Defendant contended that the comparison data would also be of assistance during plea negotiations and for mitigation purposes before the jury and trial court during the defendant's trial. On January 19, 1984, more than one month before defendant's trial, the trial court granted defendant's discovery motion but limited it to reports filed between 1979 and 1983 concerning homicides in Marion County only. A law student was employed to conduct the research. He compiled data on more than 450 homicides that occurred in Marion County between January 1, 1979, and December 20, 1983, but stated in an affidavit that the Indianapolis Police Department denied him sufficient access to records to evaluate details of more than 300 other homicides that occurred in Marion County during the same period.

Defendant now argues that the trial court committed reversible error by limiting defendant's discovery request. Further, he contends he incurred substantial

harm as a result of the Indianapolis Police Department's failure to cooperate fully with the discovery order.

With respect to the trial court's imposition of limitations on the scope of defendant's discovery of files related to homicide investigations, we note first that the trial court has wide discretionary latitude in discovery matters and its ruling will not be overturned on appeal absent a showing of clear error and resulting prejudice. *Wagner v. State* (1985), Ind., 474 N.E.2d 476; *Williamson v. State* (1982), Ind., 436 N.E.2d 90. Neither is present here.

In *Smith v. State,* we noted that the eighth and fourteenth amendments to the United States Constitution do not require us to compare the death sentences in the case before us with the penalties imposed in similar cases. 465 N.E.2d at 1114 (citing *Pulley v. Harris* (1984), 465 U.S. 37, 44, 104 S.Ct. 871, 876, 79 L.Ed.2d 29, 36). Nevertheless, it is the practice of this Court to meaningfully and systematically review each death penalty case with regard for other Indiana death penalty cases to ensure the consistent, fair and even-handed operation of Ind.Code § 35–50–2–9. *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied* (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809; *Resnover, supra.* This review is accomplished in a procedure mandated by statute, codified by rules and controlled by precedent. *Burris,* 465 N.E.2d at 191–92. *See also Resnover,* 460 N.E.2d at 929–30; *Schiro,* 451 N.E.2d at 1052–53. As we noted in *Resnover,* one aspect of our review entails an evaluation of all of appellate counsel's arguable points in behalf of mercy for his client, and that this would permit, if not require, that appellate counsel find and direct this Court's attention to any cases involving similar factual circumstances that resulted in similar or dissimilar punishment.

It does not follow from this, however, that defense counsel can automatically compel disclosure of every police, sheriff and state police report in Indiana detailing homicide investigations that resulted in the filing of murder charges. To limit such a discovery request was purely a matter for the trial court to decide after evaluating the reasonableness of the request and the necessity of the requested information for preparation of the defendant's case. The relative burden upon the State is an appropriate consideration. *Jones v. State* (1983), Ind., 449 N.E.2d 1060.

With respect to defendant's contention that he incurred substantial harm as a result of the Indianapolis Police Department's noncompliance with the discovery order, we find the argument to be without merit. Although it is discretionary with the court to impose sanctions, a continuance is usually deemed the proper remedy for a violation by the State of discovery orders. *Averhart v. State* (1984), Ind., 470 N.E.2d 666, *cert. denied* (1985), 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323. We see nothing in the record to indicate that defendant sought enforcement of the discovery order by calling the police department's noncompliance to the attention of the trial court. We thus deem the issue waived.

### 4. Juror Questionnaire

Defendant submitted ninety-one questions to the trial court and moved that those questions be added to the juror questionnaire normally mailed to prospective jurors. The trial court denied the motion, and defendant now contends that ruling constituted reversible error.

We have recognized that the purpose of *voir dire* is to determine whether a prospective juror can render a fair and impartial verdict in accordance with the law and the evidence. *Murphy v. State* (1984), Ind., 469 N.E.2d 750. The trial court has broad discretionary powers to regulate the form and substance of *voir dire,* and it will be reversed only upon a showing of manifest abuse of such discretion and a denial to the defendant of a fair trial. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102.

Defendant's argument appears to rest on the assumption that the proposed questions and method for eliciting responses would have improved the juror selection process. Despite whatever advantages arguably ex-

ist in defendant's proposed supplemental *voir dire* method, we are unable to conclude that defendant was prejudiced in any way as a result of the trial court's ruling. The record reveals that the jury selection process spanned the course of two days, during which defense counsel examined prospective jurors and effectively exercised his right to have specific jurors eliminated from consideration. He has not contended that the actual scope of his examination was unreasonably limited in any manner by the *voir dire* process. We are unable to detect a manifest abuse of discretion; thus we find no error.

### 5. Prosecutorial Conduct

 Immediately before the presentation of the State's case-in-chief, defense counsel articulated to the trial judge a concern regarding Marion County Prosecutor Stephen Goldsmith's intermittent presence during the course of the trial proceedings. Apparently, Goldsmith had exhibited a tendency to sit at counsel table during parts of the proceedings and leave the courtroom during other portions. Defense counsel was concerned that the intermittent presence of a well-known popularly elected public official such as Goldsmith could be used to highlight certain testimony because the jury would expect "something special" to occur coincident with Goldsmith's appearances. Thus, defense counsel sought an order from the court requiring Goldsmith to attend either all or none of the trial. The trial judge denied the request but admonished Prosecutor Goldsmith that to avoid distraction, he should enter and exit the courtroom only when court was recessed.

Defendant points to three instances where Prosecutor Goldsmith entered the courtroom while the trial proceedings were in process and now contends that the trial court committed reversible error by denying the request that Prosecutor Goldsmith be ordered to attend all or none of defendant's trial. Alternatively, defendant contends that Prosecutor Goldsmith's actions constituted prosecutorial misconduct warranting a new trial.

It is well settled that the trial court is vested with the duty and inherent power to control the proceedings before it. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102. The duty to control proceedings extends to any potentially disruptive behavior by parties or attorneys involved in the case. *Lawson v. State* (1980), 274 Ind. 419, 412 N.E.2d 759, *cert. denied* (1981), 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424. The trial court's exercise of its discretionary authority will not be reversed absent a manifest abuse of discretion. *Green v. State* (1984), Ind., 461 N.E.2d 108.

In the instant case, we view the trial court's denial of defense counsel's request and subsequent instruction to Prosecutor Goldsmith as a fair and logical compromise of the countervailing interests involved. Goldsmith's schedule may well have precluded his presence during the entire trial. Nevertheless, we have no basis to conclude that he should have been banned from the proceedings altogether. He was certainly entitled to be present and to assist the State in the presentation of its case as long as he did so in compliance with the court's instructions. We thus find no merit in defendant's contention that the trial court's ruling itself constituted reversible error.

 Likewise, we disagree that reversible error occurred when Prosecutor Goldsmith on three different occasions entered the courtroom during the course of the proceedings. We note first that defense counsel never objected to any of the three incidents. He explains that such an objection would have drawn even more attention to Goldsmith's presence and made his actions more apparent. However, defense counsel had sufficient opportunity to pose an objection outside the presence or hearing of the jury and request a second admonishment. By his failure to do so, the issue was waived.

 Notwithstanding defendant's waiver, we further note that this claim of error fails on the merits. Goldsmith's entrances into the courtroom, although in contravention of the court's admonishment, do not warrant reversal in this case. The analysis in *Maldonado v. State* (1976), 265 Ind. 492,

498–99, 355 N.E.2d 843, 848, is instructive on this issue:

A number of cases in this Court and in the Court of Appeals have considered the problem of improper conduct at trial by the prosecuting attorney, and the effect such conduct should have on convictions under review. From these cases the following procedure emerges for the decision of "prosecutorial misconduct" cases:

1. The Court first determines that the prosecutor in fact engaged in misconduct. This determination is made by reference to the case law and the disciplinary rules of the Code of Professional Responsibility as adopted in this State. See *Swope v. State*, (1975) [263] Ind. [148], 325 N.E.2d 193.

2. The Court then considers whether the misconduct, under all the circumstances, "placed [the defendant] in a position of grave peril to which he should not have been subjected." *White v. State*, (1971) 257 Ind. 64, 78, 272 N.E.2d 312, 320, followed in *Warner v. State*, (1976) [265] Ind. [262], 354 N.E.2d 178, 54 Ind.Dec. 481; *Rufer v. State*, (1976) [264] Ind. [258], 342 N.E.2d 856; *Turczi v. State*, (1973) 261 Ind. 273, 301 N.E.2d 752; *Robinson v. State*, (1973) 260 Ind. 517, 297 N.E.2d 409. The "grave peril" standard does not require the Court to find that the misconduct determined the outcome of the trial. *White, supra*, at 272 N.E.2d 319–20. This is the same standard which *White* mandates trial courts to observe in ruling on mistrial motions.

3. Whether the misconduct results in subjecting the defendant to "grave peril" is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct. *Swope v. State, supra.*

4. Even if an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal may still result. *Robinson v. State*, (1973) 260 Ind. 517, 297 N.E.2d 409; *Garrett v. State*, (1973) [157] Ind.App. [426], 300 N.E.2d 696.

A review of the record reveals that Goldsmith's entrances into the courtroom while the trial was in progress did not place the defendant in a position of grave peril. The first instance occurred during the direct examination of the State's first witness. The second and third instances occurred during the course of the State's direct examination of two of the investigating officers. We are unable to perceive any disruption in the proceedings as a result of these incidents. Moreover, after reviewing the testimony elicited after each specified incident, we would be strained to conclude that Goldsmith's presence was intended to highlight any particular aspect of the State's case or prejudice the defendant in any way. We conclude that Goldsmith's actions did not constitute a deliberate attempt to improperly prejudice the jury and had no probable persuasive effect on the jury. Such matters are best left to the proper discretion of the trial court. We find no abuse of discretion here.

### 6. Photographic Evidence

Defendant next claims that the trial court erred in admitting into evidence State's Exhibits 16, 17, and 18, which consisted of three photographs of the victim taken during the autopsy. He contends that State's Exhibit 16 was irrelevant to the issues at trial and that the probative value of all three photographs was clearly outweighed by their tendency to inflame the passions of the jury.

It is well settled that a trial court has wide discretion in determining the admissibility of photographic evidence and will not be disturbed absent a showing of abuse of discretion. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, *cert. denied* (1985), 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851; *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228; *Wilson v. State* (1978), 268 Ind. 112, 374 N.E.2d 45. Once it is established that a photograph is a true and accurate representation of that which it is intended to portray, its admissibility turns on the question of relevancy. *Drollinger, supra; Wilson, supra.* Photographs are relevant if they depict scenes that witness-

es would be permitted to describe verbally. Also germane to the issue is whether the photographs are illustrative of a witness's testimony and tend to prove the cause of death. *Van Orden, supra.* If a photograph is deemed relevant, it should be admitted into evidence unless its tendency to inflame the passions of the jury clearly outweighs its relevancy. *Ferry v. State* (1983), Ind., 453 N.E.2d 207; *Askew v. State* (1982), Ind., 439 N.E.2d 1350. Although the photo may depict gory, revolting or inflammatory details of the crime, this is not, by itself, a sufficient basis for its exclusion from evidence. *Ferry, supra; Akins v. State* (1981), Ind., 429 N.E.2d 232; *Drollinger, supra; Wilson, supra; Sotelo v. State* (1976), 264 Ind. 298, 342 N.E.2d 844.

In the instant case, we see no error in admitting into evidence the challenged exhibits. We note first that Dr. John C. Baenziger, the pathologist who performed the autopsy, testified that all three photographs fairly and accurately portrayed the victim's wounds after the blood had been washed away. State's Exhibit 16 depicted substantial bruising and numerous lacerations about the victim's face and forehead. Defendant argues that this particular photograph was irrelevant to the issue of defendant's guilt because the bruising depicted in the photograph was caused by the defendant's accomplice, Earl Tillberry, who testified that he twice kicked the victim in the face. This argument is without merit. Tillberry testified that defendant beat the victim about the head with his fists and a fireplace poker. Thus we are unable to agree that all of the bruising depicted in the photograph was caused by Tillberry. In addition, the photograph depicts numerous lacerations about the victim's face and forehead, apparently inflicted by other means. Dr. Baenziger used this photograph, along with the two others, to illustrate the different types of wounds and explain his conclusion that a variety of weapons were used to inflict those wounds. Tillberry's testimony served to explain the source of some of the injuries to the victim's face but does not necessarily render the photograph irrelevant as to the defendant's role in the murder.

State's Exhibit 17 depicted numerous lacerations on the top and rear of the victim's head. State's Exhibit 18 portrayed multiple stab wounds inflicted in the victim's back. In addition to illustrating the nature of the wounds, the photographs assisted Dr. Baenziger in explaining the cause of death. Such testimony was not only relevant in a murder prosecution, but it was necessary to the State's case. The photographs were accordingly relevant as they fell within the scope of the rule that they depicted scenes about which a witness would be permitted to testify. *Drollinger, supra.* Moreover, they served to illustrate Dr. Baenziger's testimony and tended to prove the cause of death. *Van Orden, supra.*

In support of his argument that the prejudicial effect of the photographs outweighed their probative value, defendant suggests that the photographs were more gruesome than necessary because the victim's body appears wet and the wounds are portrayed in an unnatural light. We disagree with defendant's assessment. The scenes depicted are indeed repugnant, but we cannot say that their tendency to inflame the jury clearly outweighed their probative value. It was not error to admit them into evidence.

### 7. Defendant's Letter

Defendant next contends that the trial court erred in admitting into evidence State's Exhibit 61A, a handwritten letter addressed to "Mom" and signed by the defendant. Police received the letter from Michael Games, the defendant's brother, on July 17, three days after the victim's murder. The letter reads in part as follows:

"to Mom

I love you vere mush mom but I didton woit to kill hem I sore mom woat i put you thyoo. I cant do that mash time i cant do it. so i no woat todo whit my sailfe. I dod desove to live i no you are a sham a me. I dod banm you mom. good bey Mom love you vere vere mush

/s/ Jimmy Games"

Defendant argues that because the letter does not indicate who, if anyone, defendant was sorry for killing, the letter was of no probative value to the question of defendant's guilt and merely invited undue jury speculation.

Probative value is the tendency of evidence to establish the proposition that it is offered to prove. *McCormick on Evidence* § 185, at 541 (Cleary 3d ed. 1984). In his discussion of probative value, Professor Cleary states:

> Under our system, molded by the tradition of jury trial and predominantly oral proof, a party offers his evidence not *en masse,* but item by item. An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. It need not even make that proposition appear more probable than not. Whether the entire body of one party's evidence is sufficient to go the jury is one question. Whether a particular item of evidence is relevant to his case is quite another. It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable. Thus, the common objection that the inference for which the fact is offered "does not necessarily follow" is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence ever could meet. A brick is not a wall.

*McCormick on Evidence, supra,* at 542–43.

These observations are congruent with our holding in *Waters v. State* (1981), 275 Ind. 182, 415 N.E.2d 711, where a state witness in a murder prosecution testified that he had overheard defendant tell his father, "You don't have to worry about the money. It's all taken care of." Despite defendant's objection that the testimony was irrelevant and immaterial, we held that the statement tended to indicate that the defendant had "taken care" of the problem of the debt by killing the victim to avoid payment; thus it was properly admitted under the party admission exception to the hearsay rule.

Likewise, we must here reject the notion that the letter was without probative value. The letter clearly manifests a consciousness of guilt and contains statements by the defendant which, when taken in conjunction with other evidence, may lead to a logical inference that defendant was referring to the victim in this case. Defendant has cited no authority, nor can we find any, in support of the proposition that for a statement to be admissible, a person referred to in the statement must be identified by name.

Defendant has appropriately conceded that the letter was properly authenticated by a handwriting expert who compared the letter to handwriting exemplars known to have been written by the defendant. The letter therefore constituted an "admission" and was properly admitted into evidence under the party admission exception to the hearsay rule.

### 8. Accomplice Testimony

■ Defendant's next assignment of error is predicated on the State's failure to fully disclose details of a plea agreement negotiated with the defendant's accomplice, Earl Tillberry, prior to Tillberry's substantive testimony concerning the murder.

The record reveals that toward the end of Tillberry's direct examination, he admitted entering into a plea agreement with the State and that he was testifying pursuant to that agreement. On cross-examination, defense counsel launched a vigorous attack on Tillberry's credibility by eliciting the details of the agreement. The plea agreement provided that in exchange for Tillberry's plea of guilty to murder and testimony against the defendant in the instant case, the State would agree to drop three charges and recommend a reduced sentence. Tillberry also admitted a concern that if he did not cooperate with the State, he could face the possibility of a longer prison sentence and possibly face the death penalty.

Despite the ultimate disclosure of the plea agreement details, the defendant contends that the State's failure to fully disclose the details *prior to* Tillberry's extensive testimony against the defendant caused the defendant to be deprived of due process as guaranteed by the fourteenth amendment to the Constitution of the United States.

In support of his argument, defendant primarily relies on a line of cases from this Court holding that plea agreements between the State and a state witness must be fully disclosed to the trier of fact. In *Newman v. State* (1975), 263 Ind. 569, 572, 334 N.E.2d 684, 686–87, we stated:

> An accomplice who turns "state's evidence" and agrees to "cooperate" with the State in consideration of leniency or the dismissal of charges by the State, to be realistic, is being bribed, regardless of the fact that public policy has approved such action in the interest of effective law enforcement. It does not necessarily follow that because of inducements offered to the accomplice his testimony is false. It is, however, highly suspect. Because of the pressure of such undue influence upon the witness in such cases the jury should have the evidence relating thereto. Such type of influence naturally impairs the credibility of such a witness.

> In this state a defendant may be found guilty solely on the evidence of a confessed accomplice. *Walker v. State,* (1934) 206 Ind. 232, 189 N.E. 127; *Payne v. State,* (1924) 194 Ind. 365, 142 N.E. 651. Because human nature would tend to cause accomplices to "unload" against their partners and desire to clear themselves as much as possible of blame for a crime, such testimony should be highly scrutinized by the jury or fact finder. Such fact finding body should have before it all the relevant circumstances that caused or induced such witness to testify, including the rewards for such testimony.

*See also Jarrett v. State* (1986), Ind., 498 N.E.2d 967. Defendant's reliance on *Newman* and other similar cases is misplaced. These cases emphasize the need for the fact-finder to be apprised of any "deals" that may tend to cause or influence the witness's testimony. Defendant has failed to cite, and our research has failed to disclose, any authority for the proposition that the existence of a plea agreement must be disclosed to the fact-finder prior to the witness's substantive testimony concerning the crime. Defendant boldly asserts that the State's failure to disclose the details of the plea agreement prior to Tillberry's substantive testimony resulted in the jury being unable to effectively gauge Tillberry's credibility. We disagree. Defendant's argument underestimates the jury's capacity to reevaluate the credibility of a witness's testimony following the disclosure of any facts indicating witness bias. The jury here was fully apprised of the details of the plea agreement and, we trust, was quite competent to evaluate the credibility of Tillberry's testimony in light of the terms of that agreement. We find no error.

### 9. Death Penalty as Disparate From Accomplice's Sentence

Defendant contends that the trial judge abused his discretion in sentencing defendant to death in light of the fact that defendant's accomplice, Earl Tillberry, received only a fifty-five-year prison sentence for his role in the murder.

We have previously addressed and rejected arguments similar to this in *Brewer v. State* (1981), 275 Ind. 338, 373–74, 417 N.E. 2d 889, 909 (defendant's death sentence not excessive or irrational when compared with accomplice's sixty-year prison sentence); *Young v. State* (1985), Ind., 482 N.E.2d 246 (twenty-year prison sentence appropriate despite co-defendant's ten-year sentence); *Gajdos v. State* (1984), Ind., 462 N.E.2d 1017 (trial judge did not abuse discretion by sentencing co-defendant to lesser term than defendant); *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964 (defendants' sentences held not excessive or irrational despite relatively light sentences of accomplices). *See also Green v. State* (1983), Ind., 451 N.E.2d 41; *Richey v. State* (1981), Ind., 426 N.E.2d 389; *U.S. v. Donner,* (7th Cir.1975), 528 F.2d 276. In deciding the

issue in *Morgan, supra,* Justice Prentice stated:

> In similar situations, we have passed upon the sentences meted out to principals and accessories. It may be gleaned from those decisions that when one defendant proceeds to trial and his accomplice pleads guilty, the sentences need not be identical. This is by reason of the special nature of a guilty plea and because such a plea does not result in a judicial determination on the merits. *See Tessely v. State,* (1978) 267 Ind. 445, 370 N.E.2d 907; *Combs v. State,* (1973) 260 Ind. 294, 295 N.E.2d 366. In short, there is no requirement of consistency.

419 N.E.2d at 969. Likewise, in the instant case, Tillberry received a fifty-five-year sentence pursuant to a negotiated plea agreement. Tillberry's sentence did not preclude the imposition of the death penalty on the defendant.

Moreover, the evidence reveals that disparate sentences were logically warranted by the circumstances in this case. Tillberry was fourteen years old at the time of the murder, whereas defendant was eighteen. Defendant instigated the robbery plan and prompted Tillberry to inflict the first stab wound. Defendant administered the vast majority of wounds when he stabbed and bludgeoned the victim with various weapons, including knives and a meat cleaver.

We find no abuse of discretion in the trial court's determination that defendant's conduct and culpability warranted a more severe penalty than that imposed upon his accomplice.

### 10. Consideration of Mitigating Factors

Defendant's next allegation of error is premised on the trial court's consideration and application of mitigating circumstances.

Indiana Code § 35–50–2–9 provides that a death sentence may be imposed only after the court considers the jury's recommendation and then finds that the State proved beyond a reasonable doubt the existence of at least one aggravating circumstance and that the existing mitigating circumstances are outweighed by the aggravating circumstance or circumstances.

The trial court's judgment reads in relevant part as follows:

1. That the defendant, James R. Games, did commit the crime of Robbery upon the person of Thomas H. Ferree on the 14th day of July, 1983.

2. That during the course of said Robbery, the defendant, James R. Games, did intentionally kill the victim, Thomas H. Ferree by stabbing during the course of the robbery of Thomas H. Ferree on said date.

3. That such aggravating circumstances and intentional killing have been proven by the State beyond a reasonable doubt.

4. That the mitigating circumstances were the youthful age of the defendant, James R. Games, and his relative inexperience.

5. Court having examined the pre sentence report and hearing other evidence, does not find any other mitigating factors.

\* \* \* \* \* \*

9. The Court now finds that the aggravating circumstances outweigh the mitigating factors and it is the judgment of this Court that the defendant, James R. Games, shall suffer the penalty of death for the offense of murder as charged in Count Two.

Defendant first asserts that the State failed to present sufficient evidence to support the trial court's finding that the murder was committed during the course of a robbery. In reviewing this issue, we will not weigh conflicting evidence nor will we judge the credibility of witnesses. We will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Burris v. State* (1984), Ind., 465 N.E.2d 171, 193, *cert. denied* (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied* (1980), 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed. 2d 105.

Robbery is defined in Ind.Code § 35–42–5–1 as follows:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) By using or threatening the use of force on any person; or

(2) By putting any person in fear;

commits robbery, a Class C felony.... [IC 35–42–5–1, as added by Acts 1977, P.L. 340, § 39; 1982, P.L. 204, § 34; P.L. 186–1984, § 1.]

The testimony at trial reveals that the defendant and his accomplice conspired to accompany the victim to his home, tie him up, steal his stereo, and escape in his car. Shortly after arriving at the victim's home, the conspirators modified their plan and further decided to stab the victim. Immediately following the murder, the two were apparently startled by an alarm and left the scene in the victim's car without taking the stereo. We find the evidence clearly sufficient to support the trial court's conclusions that the defendant intentionally took the victim's car by using force and that the victim was murdered during the course of the robbery scheme.

Defendant next argues that the trial court, in determining the propriety of the death penalty in this case, failed to find and properly weigh a number of purported mitigating circumstances. Specifically, defendant points to his minimal prior criminal record, his paltry education, his unstable family life, the fact that he consumed alcohol and marijuana on the day of the murder, his voluntary surrender into police custody, and his exhibited remorse over the killing.

In *Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1254–55, we stated:

When a defendant argues mitigating circumstances to the trial court, the sentencing judge is not obligated to explain why he has chosen not to make a finding of mitigation. This is particularly true when an examination of the underlying record shows the highly disputable nature of the mitigating factors. *Stark v. State* (1986), Ind., 489 N.E.2d 43; *Frappier v. State* (1983), Ind., 448 N.E.2d

1188. Moreover, the trial court is not obligated to credit or weigh the defendant's evidence of mitigating circumstances the same way the defendant does. *Perry v. State* (1983), Ind., 447 N.E.2d 599. However, the failure of the trial court to find mitigating circumstances which are clearly supported by the record may reasonably give rise to a belief that they were overlooked and hence not properly considered. *Page [v. State* (1981), Ind., 424 N.E.2d 1021] at 1023.

Having thoroughly examined the record in this case, we are unpersuaded that the defendant should prevail on this issue. Defendant's juvenile history discloses adjudications involving charges of burglary, theft, possession of alcohol and possession of marijuana. His adult record reveals arrests for alcohol offenses and conversion. We see no error in the trial court's refusal to treat this prior criminal record as a mitigating circumstance.

The record does reveal that defendant suffered from a turbulent family background and a meager education. The presentence report noted that his background had deprived him of an experience base for upward mobility or problem-solving ability within socially acceptable bounds. The trial court, in considering his background, did find that defendant's "relative inexperience" constituted a mitigating factor, yet, even when combined with defendant's youthful age, was outweighed by the aggravating factors.

As for defendant's consumption of intoxicants on the day of the murder, there was no evidence that defendant's capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law was substantially impaired.

With regard to the fact that defendant voluntarily surrendered into police custody, we note that the testimony of Indianapolis Police Department officers reveals that the murder investigation was rapidly beginning to focus on the defendant, making his apprehension nearly inevitable. We view his surrender as a factor carrying little weight or significance.

As for defendant's alleged remorse over the commission of the murder, we find little evidence to support the argument that it should constitute a mitigating circumstance. On the contrary, the pre-sentence report indicated that defendant "did not appear to exhibit much remorse because of his actions" and that "[h]e appeared more concerned about living with what he has done and escaping the death penalty."

We therefore find none of the purported mitigating circumstances can be presumed to have been overlooked by the trial judge. Thus, no error is found on this issue.

### 11. Constitutionality of Death Penalty As Vindictive Justice

■ Defendant separately contends that the Indiana death penalty statute violates article I, section 18, of the Indiana Constitution requiring that our penal code be based on principles of reformation and not on vindictive justice. This issue has already been decided adversely to defendant's position in *Lowery, supra; Dillon v. State* (1983), Ind., 454 N.E.2d 845, *cert. denied* (1984), 465 U.S. 1109, 104 S.Ct. 1617, 80 L.Ed.2d 145; *Averhart, supra; Smith, supra,* 465 N.E.2d 1105; *Schiro, supra; Williams, supra; Fleenor, supra.*

We therefore reject defendant's contention that the Indiana death penalty scheme is unconstitutional.

### Conclusion

Having addressed and disposed of all the issues raised by defendant, and finding that the trial court followed all the required statutory procedures pertaining to death penalties, we turn to the question of whether the death penalty is appropriate considering the nature of the offense and the character of the offender.

Defendant and his accomplice conspired to rob the victim and consciously determined that the plan would succeed at any cost. As the victim lay on the floor begging and struggling for his life, the defendant bludgeoned the victim in the back and neck with an assortment of knives, hacked at the victim's head with a meat cleaver, and then left him to die in a pool of blood.

The undisputed evidence showed that defendant understood and appreciated the wrongfulness of his acts. The overwhelming evidence proves both the defendant's guilt and the aggravating circumstance beyond a reasonable doubt. We conclude that the death sentence is not here arbitrarily or capriciously applied and that it is reasonable and appropriate in this case.

The judgment of the trial court is affirmed. This cause is remanded to the trial court for the purpose of setting a date for the death sentence to be carried out.

SHEPARD, C.J., and GIVAN and PIVARNIK, JJ., concur.

DeBRULER, J., concurs and dissents with opinion.

DeBRULER, Justice, concurring and dissenting.

Article VII of the Indiana Constitution and I.C. 35–50–2–9(h) govern the Indiana death sentencing hearing by imposing on this Court the distinct duty to review a sentence of death and determine whether it is appropriate to the offender and his crime. *Van Cleave v. State* (1987), Ind., 517 N.E.2d 356; *Vandiver v. State* (1985), Ind., 480 N.E.2d 910. This review includes an examination of the interpretation and application of the criteria set forth in the death sentence statute as revealed by the entire record of trial court proceedings, to include the manner in which the judge evaluated possible mitigating factors pointed out in argument and the manner in which the judge assessed the relative weight of such factors. *Thompson v. State* (1986), Ind., 492 N.E.2d 264; *Van Cleave v. State* (1987), Ind., 517 N.E.2d 356.

In summation before the judge, defense counsel argued that appellant's "ability to conform his conduct to the law [sic] impaired as the result of intoxication or any intoxicant," was a mitigating factor. For the purpose of the sentence, the judge considered the presentence report which recorded at least seven juvenile dispositions and adult convictions involving the use and abuse of drugs and alcohol. The probation officer who prepared the presentence re-

port indicated heavy drug use in his comments upon the evaluation sheet in the report and, when testifying at the sentencing hearing before the judge, mentioned appellant's use of drugs and alcohol. The judge and jury heard appellant's accomplice testify at trial that in the hours before the killing the two smoked several marijuana cigarettes and drank whiskey. The record, including probation reports, chronicles a pattern of his use and abuse of drugs and alcohol from the age of fourteen until he killed at the age of eighteen. His father was an abusive alcoholic prone to physical violence towards others. The court considered appellant's past record of arrests and convictions for drug and alcohol abuse for the purpose of determining whether the mitigator of "no significant history of prior criminal conduct" was present, I.C. 35–50–2–9(c)(1), but gave no mitigating force to the arrests and convictions as evidence of appellant's impaired capacity to "appreciate the criminality of his conduct" or to "conform his conduct to the requirements of the law," I.C. 35–50–2–9(c)(6), (8), concluding only that appellant's age and relative inexperience were entitled to mitigating weight. Based upon this record, I find a substantial possibility that appellant suffered an impaired capacity when he killed, which stemmed from his lengthy and constant use of drugs and alcohol as he was growing and developing. Therefore, I also find that there is a substantial risk that the death sentence will be wrongly carried out here. I would therefore concur in affirming the conviction, but remand for a new sentencing hearing before the court.