Donald W. MYERS, Sr., Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 44A03–0108–CR–288.

Court of Appeals of Indiana.

March 28, 2002.

---

Jeffrey W. Wible, LaGrange, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Donald W. Myers, Sr., appeals his conviction of Assisting a Criminal, as a Class D felony. He presents one issue for our review, namely, whether the State presented sufficient evidence to sustain his conviction.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

In December 1998, Myers, who owned D & D Auto Parts and Sales, contacted the Indiana State Police, claiming that his secretary, Karen McMullen, had forged his name on one of his company checks and cashed it at Farmers State Bank. Detective Jeffrey Boyd was assigned to investigate the allegation. Upon obtaining a copy of the forged check from the bank, Detective Boyd compared the signature on the check with samples of McMullen's handwriting. He concluded that the endorsement on the check appeared to be in McMullen's handwriting and that Myers' signature appeared to be traced. Detective Boyd also obtained security tapes

from the bank and determined that Carl Lowing, an acquaintance of McMullen's, cashed the forged check.

The State filed forgery charges, as Class C felonies, against McMullen and Lowing in February 1999 and issued arrest warrants for both individuals. Following several unsuccessful attempts to locate McMullen, Detective Boyd received several tips that McMullen was living with Myers and keeping the books for Myers' business. But when confronted with this information in July 1999, Myers denied any contact with McMullen and told Detective Boyd that he believed McMullen was living in Florida.

In August 1999, Myers contacted Detective Boyd and informed him that McMullen had, this time, forged one of his personal checks. Detective Boyd arranged to meet Myers at the bank to file an affidavit regarding the forged check. During this meeting, Myers advised Detective Boyd that McMullen had been living with him and working for him from late July 1999 through August 1999. Following this meeting, Boyd obtained a copy of the forged personal check and made a handwriting comparison. Boyd also viewed the banks' security videos to establish who passed the check and determined that McMullen had endorsed the check and traced Myers' signature. As a result, the State filed an additional forgery charge against McMullen, as a Class C felony.

McMullen was tried on the first forgery charge in November 1999, and the trial ended in a hung jury. The State subsequently filed motions to dismiss both forgery charges in May 2000, and the trial court granted the motions. The State then charged Myers with assisting a criminal, as a Class D felony. The information charged that Myers did, "with the intent to hinder the apprehension or punishment of Karen Delores McMullen, a fugitive from justice charged with Forgery, a Class C felony, harbor or conceal said Karen Delores McMullen." A jury found Myers guilty in May 2001, and the trial court sentenced him to two years, with eighteen months suspended.

## DISCUSSION AND DECISION

Myers contends that the State did not present sufficient evidence to sustain his conviction for assisting a criminal, as a Class D felony. Specifically, he argues that because the State failed to prove McMullen had committed a Class C felony, his conviction cannot stand.

In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of witnesses. *Ferrell v. State,* 746 N.E.2d 48, 50 (Ind.2001). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

Indiana Code Section 35-44-3-2, also known as the assisting a criminal statute, reads as follows:

A person not standing in the relation of a parent, child, or spouse to another person who has committed a crime or is a fugitive from justice, who, with intent to hinder the apprehension or punishment of the other person, harbors, conceals, or otherwise assists the person commits assisting a criminal, a Class A misdemeanor. However, the offense is:

(1) a Class D felony if the person assisted has committed a Class B, Class C, or Class D felony; and

(2) a Class C felony if the person assisted has committed murder or a Class A felony, or if the assistance was providing a deadly weapon.

Thus, in order to convict Myers of assisting a criminal, as a Class D felony, the State was required to prove that McMullen committed a Class B, C or D felony. Myers relies on the doctrine of mandated consistency, arguing that his conviction as an accessory under the assisting a criminal statute should be overturned and his sentence vacated because the State dismissed the charges against McMullen before Myers was tried and convicted. Myers cites our supreme court's discussion in *McKnight v. State*, 658 N.E.2d 559 (Ind. 1995), in which the court applied the doctrine of mandated consistency in the context of the assisting a criminal statute. *See Sanquenetti v. State*, 727 N.E.2d 437, 440 (Ind.2000).

■■■ In *McKnight*, the court recognized that at common law, criminal offenders were divided into two general categories: principals and accessories. Accessories were further divided into "accessories before the fact" and "accessories after the fact."[1] *Id.* at 561 (citing Blackstone at 40). Absent waiver, "no man could be tried as an accessory till after the principal was convicted, or, at least, he must have been tried at the same time with him." *Id.* The *McKnight* court further acknowledged that although the current version of the assisting a criminal statute has abandoned the common law terms of principal and accessory, the statute has not been completely divorced from its common law origins. *Id.* The court found that:

> Though the statute no longer makes the accessory after the fact guilty of the same crime as the principal, his guilt is still contingent on a finding of the degree of his principal's guilt. Both the

internal logic of the statute—that the accessory's criminal liability increases with the principal's criminal liability—and the practical absurdity of finding an accessory guilty of assisting a person who was found not to be a criminal in a trial on the merits militate against such a reading of the statute. Logic alone would seem to require that one cannot be convicted of assisting a criminal if there is no criminal to assist.

> Unlike the Aiding, Inducing or Causing statute, which explicitly changes the common law rule that a principal must be tried before an accessory, the assisting a criminal statute is silent on the issue. Its language still echoes Blackstone's definition of accessory after the fact and the legislature has yet to except it from the common law rule. As this Court has stated, [w]hen the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication. Moreover, because it is a penal statute, it is to be strictly construed against the State, with the final objective of determining and effecting the legislative intent. Given the statutory language and the presumed knowledge of the Legislature, the assisting a criminal statute therefore has not received explicit exception from the common law rule requiring conviction of the principal before convicting his accessory.

*Id.* (citations omitted).

Myers asserts that our supreme court's reasoning in *McKnight* applies here. We

---

**1.** An accessory before the fact was one who, being absent at the time of the crime committed, doth yet procure, counsel, or command another to commit a crime. *McKnight*, 658 N.E.2d at 561 (citing 3 W. Blackstone, Commentaries 34, 36). On the other hand, an accessory after the fact was a person who knowing a felony to have been committed, receives, relieves, confronts, or assists the felon. *Id.*

agree, recognizing that Myers' guilt was contingent upon a finding of McMullen's guilt. In this case, McMullen was tried for forgery and the trial ended in a hung jury. Subsequently, but prior to Myers' trial, the State dismissed both forgery charges against McMullen. Because McMullen was not convicted of forgery, as a Class C felony, before Myers was tried and convicted, Myers' conviction of assisting a criminal, as a Class D felony, cannot stand.

The State contends that the doctrine of mandated consistency is inapplicable in this case, arguing that Myers' conviction was proper pursuant to *Combs v. State,* 260 Ind. 294, 295 N.E.2d 366, 370 (Ind. 1973), in which our supreme court stated that an accessory may be tried and convicted when the proof of the underlying crime is sufficient, even though the principal was never tried. However, the appellant in *Combs* was charged with being an accessory under the Aiding, Inducing or Causing an Offense Statute, which provides that a person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, *even if the other person has not been prosecuted, convicted or acquitted of the offense. See* Ind.Code § 35–41–2–4 (formerly Ind.Code § 35–41–2–4) (emphasis added). Since that statute explicitly preempts the common law requirement that the other person be first convicted, the rule set forth in *Combs* is inapplicable in this case.

■ Our inquiry does not end here, however. The charging information states that Myers did, "with the intent to hinder the apprehension or punishment of Karen Delores McMullen, a *fugitive from justice* charged with Forgery, a Class C felony, harbor or conceal said Karen Delores McMullen." Therefore, the State was also required to prove at trial that McMullen was a fugitive from justice.

To prove that McMullen was a fugitive from justice, the State was required to show that McMullen had been charged with the crime of forgery in Indiana and that she had fled from Indiana to another state. *See Frost v. State,* 527 N.E.2d 228, 229 (Ind.Ct.App.1988). And to convict Myers of assisting McMullen, the State was required to prove that Myers harbored or concealed McMullen with the intent to hinder her apprehension. *See* Ind. Code § 35–44–3–2.

Here, McMullen forged Myers' business check in December 1998. Charges were filed against her in February 1999 and a warrant was issued for her arrest. At Myers' trial, McMullen testified that after she forged Myers' business check, she moved to Florida. However, the State introduced McMullen's prior testimony that she had lived with Myers and worked for him for a period of time before she was arrested. Furthermore, Officer Boyd testified at trial that Myers informed him in August 1999 that McMullen had obtained and forged one of his personal checks. When Boyd asked Myers how McMullen gained possession of the personal check, Myers admitted:

> that Ms. McMullen had been living with him for the past short period of time. That he was having sex with her and that he also allowing [sic] her to do his bookkeeping, that he hadn't turned her in because he didn't feel the judicial system would properly reimburse him for his loss and that at least if she worked for him that he could collect that money as far as wages.

Transcript at 121.

It can be reasonably inferred from this evidence that McMullen fled Indiana for a period of time after she forged Myers' business check and then returned to live with Myers prior to her arrest. This evi-

dence was sufficient to prove that McMullen was a fugitive from justice. Moreover, the evidence was sufficient to show that Myers harbored or concealed McMullen with the intent to hinder her apprehension. The State provided the jury with direct evidence of Myers' admission that McMullen had been residing with him and that he deliberately did not report her to the authorities. From this admission, it can be inferred that Myers' intent was to hinder McMullen's apprehension by allowing her to reside with him. We find that the State presented sufficient evidence that Myers harbored or concealed McMullen, a fugitive from justice. Therefore, although we reverse Myers' conviction of assisting a criminal, as a Class D felony, we conclude that the State presented sufficient evidence of assisting a criminal, as a Class A misdemeanor. *See Downey v. State*, 726 N.E.2d 794, 798 (Ind.Ct.App.2000) (recognizing that this court may remand to trial court with instructions to vacate judgment and sentence as to one offense and to enter judgment on lesser offense when there has been insufficiency of evidence on particular element of convicted offense.) We remand to the trial court with instructions to vacate Myers' Class D felony conviction and enter judgment of conviction on assisting a criminal, as a Class A misdemeanor.

Reversed and remanded.

BAKER, J., and MATTINGLY–MAY, J., concur.