



# IN THE
# Court of Appeals of Indiana

Dylan L. Burton,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 5, 2026

Court of Appeals Case No.
25A-CR-2659

Appeal from the Cass Superior Court

The Honorable Lisa Swaim, Judge

Trial Court Cause No.
09D02-2507-CM-459

---

**Opinion by Judge DeBoer**
Judges Altice and Kenworthy concur.

**DeBoer, Judge.**

## Case Summary

[1] The State charged Dylan Burton with Class A misdemeanor assisting a criminal, alleging he harbored, concealed, or assisted a fugitive from justice. Burton was convicted following a bench trial. On appeal, he argues the evidence was insufficient to support his conviction because the State failed to prove the person he assisted was a "fugitive from justice" under the assisting a criminal statute, Indiana Code section 35-44.1-2-5(a). The single issue on appeal is whether proving a person is a fugitive from justice under that statute requires evidence of interstate flight. Because we conclude the statute unambiguously does not impose such a requirement, we affirm.

## Facts and Procedural History[1]

[2] Burton and Kayla Graham dated periodically between 2010 and 2025 and have children together. In 2024, Graham pled guilty to felony stalking and was sentenced to two years of probation. On June 25, 2025, the probation department filed a petition to modify or revoke her probation,[2] alleging she

---

[1] We held a traveling oral argument in this case on May 19, 2026, at Mississinewa High School in Gas City. We thank counsel for their exceptional written and oral advocacy. We also extend our gratitude to Mississinewa High for hosting the event as well as to the attendees for their thoughtful questions posed to the panel after the argument. Finally, we'd be remiss not to mention how thoroughly we enjoyed sharing brunch with Mr. Adam Williamson and his AP U.S. Government students.

[2] This was not the first petition to revoke Graham's probation. On January 13 and March 26, 2025, probation filed notices that she violated her probation. The March notice alleged she did so by committing the new crime of invasion of privacy. In both instances, arrest warrants were issued and served after the notices were filed. The June 25 petition incorporated the earlier allegations and was labeled "2ⁿᵈ Amended

failed to report to her probation officer on two occasions and didn't participate in substance use treatment as recommended. The next day, the Miami Superior Court issued a warrant for her arrest on the charge that she had violated her probation.

[3] Shortly after the warrant was issued, Graham told Burton she was having domestic issues with a man she had been seeing.[3] On July 9, she told Burton the man had burned their children's belongings, and she asked him to retrieve some property she was keeping in a storage unit near Logansport. Burton picked up Graham knowing she had an active warrant, but he dropped her off before calling the police to help him retrieve the property she'd requested. He then met Cass County Sheriff's Department Officer Leoudy Ventura at the storage unit. *See* Transcript at 48; State's Exhibit 2 at 17:13-18:38. Burton told Officer Ventura he didn't know where Graham was but believed she might be headed to a rehabilitation facility. When Burton left the storage facility, he picked up Graham and gave her a ride to Logansport. *See* State's Ex. 2 at 18:39-21:15 (Burton interviewing with Officer Leoudy and explaining he did not "necessarily . . . lie" about Graham's location, they were trying to get her affairs in order before she addressed her warrant, and neither he nor Graham intended for her to evade police).

---

Petition[.]" Appellee's Appendix Vol. 2 at 18. However, on appeal, neither party mentions the earlier alleged violations.

[3] The man Graham was having domestic issues with was not the same one related to her stalking case.

While he was off duty the next day, Officer Ventura noticed Burton's vehicle in the parking lot of the same storage facility. Then the officer saw Burton, with Graham in the vehicle, drive to a nearby gas station. The officer arrested them at the gas station.

The State charged Burton with Class A misdemeanor assisting a criminal,[4] alleging that between July 9 and 10, 2025, he "did harbor, conceal, or assist Kayla Graham, who is a fugitive from justice, with the intent to hinder the apprehension of said person . . . ." Appellant's Appendix Vol. 2 at 8. At his bench trial, the court took judicial notice of Graham's stalking case without objection, and her arrest warrant was admitted into evidence. In his closing argument, Burton argued the evidence failed to show he took "any affirmative act" to harbor, conceal, or assist Graham. Tr. at 54. The court explained that it believed Burton "meant well with" his actions, but it found that he had "hinder[ed] [Graham's] apprehension by . . . giving her rides and . . . getting all of her stuff together" while she had an outstanding warrant. *Id.* at 57. Accordingly, the court found Burton guilty of assisting a criminal and sentenced him to time served. Burton now appeals.

## Discussion and Decision

Burton argues the State failed to prove Graham was a "fugitive from justice" because "[t]here was no evidence of interstate flight." Appellant's Brief at 8.

---

[4] Ind. Code § 35-44.1-2-5(a).

When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of witnesses, and we "will affirm a conviction unless no reasonable [trier of fact] could have found 'the elements of the crime proven beyond a reasonable doubt.'" *Trejo v. State*, 269 N.E.3d 871, 874-75 (Ind. Ct. App. 2025) (quoting *Teising v. State*, 226 N.E.3d 780, 783 (Ind. 2024)), *trans. denied*. This case, however, hinges on questions related to statutory interpretation because the parties only dispute whether Graham was a "fugitive from justice" within the meaning of Indiana Code section 35-44.1-2-5(a). "We review issues of statutory interpretation *de novo* because they are pure questions of law." *Coonce v. State*, 240 N.E.3d 721, 723 (Ind. Ct. App. 2024).

[7] "In interpreting a statute, the first step is to determine whether the Legislature has spoken clearly and unambiguously on the point in question." *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015). We generally take words and phrases "in their plain, or ordinary and usual, sense." Ind. Code § 1-1-4-1(1). If words or phrases have a technical meaning, we give them "their technical import." *Id.* But "[u]nless a technical meaning applies, courts . . . 'avoid legal or other specialized dictionaries . . . and turn instead to general-language dictionaries.'" *IBEW Local 305 v. Allen Cnty. Assessor*, __ N.E.3d __, 2026 WL 710301, at *3 (Ind. T.C. Mar. 13, 2026) (quoting *Rainbow Realty Grp. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019)) (second ellipsis in original). "[W]hen a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction." *Anderson*, 42 N.E.3d at 85 (quoting *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4 (Ind. 2005)) (alteration in

original).  Only if a statute is ambiguous do we use rules of statutory construction to endeavor to give effect to the intent of the Legislature.  *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007) ("Clear and unambiguous statutes leave no room for judicial construction.").

[8]   Under Indiana Code section 35-44.1-2-5(a),

> [a] person not standing in the relation of parent, child, or spouse to another person who has committed a crime or is a fugitive from justice who, with intent to hinder the apprehension or punishment of the other person, harbors, conceals, or otherwise assists the person commits assisting a criminal, a Class A misdemeanor.

Generally, "[t]he assisting a criminal statute . . . appl[ies] to people who did not actively participate in the crime itself, but who did assist a criminal after he or she committed a crime." *Jacobs v. State*, 148 N.E.3d 1175, 1178 (Ind. Ct. App. 2020) (quoting *Hauk v. State*, 729 N.E.2d 994, 999 (Ind. 2000)).  Under the statute, the State must prove the defendant intended to hinder the assisted party's apprehension or punishment, regardless of whether the person assisted was charged with or convicted of a crime.  *Id.* at 1179.  To prove this mental state, the State must show the defendant "had reason to believe that the assisted person was subject to apprehension or punishment." *Id.*  Regarding the action the defendant must have taken, "harbor means 'to shelter, to give refuge, to lodge, care for and protect'; conceal means 'to hide, secrete, to keep out of sight, or prevent the discovery of'; and assist 'contemplates some positive, affirmative act intended to help or aid someone to escape arrest, capture or

punishment.'" *Id.* (quoting *Clements v. State*, 808 N.E.2d 198, 200 (Ind. Ct. App. 2004), *reh'g denied*).

[9] Although the State was required to prove Burton had the requisite mental state and harbored, concealed, or assisted Graham, Burton does not contest any of those elements on appeal. Instead, he argues the evidence was insufficient to prove Graham was a "fugitive from justice" because there was no evidence presented that she fled the State of Indiana while there was an outstanding warrant for her arrest. The State concedes it had to prove Graham was a fugitive from justice because the charging information did not allege she committed a crime. *See Myers v. State*, 765 N.E.2d 663, 667 (Ind. Ct. App. 2002) (noting the State had to prove the person assisted was a fugitive from justice because its charging information only alleged that status), *superseded on other grounds by Gulbranson v. State*, 953 N.E.2d 533, 535-36 (Ind. Ct. App. 2011).

[10] Burton points to three Court of Appeals cases to support his position. In *Frost v. State*, Frost was charged and convicted under a prior version of this statute for harboring a juvenile who had committed an act constituting burglary. 527 N.E.2d 228, 228-29 (Ind. Ct. App. 1988). In reversing his conviction, the panel found Frost had not assisted someone who had committed a crime because "[a]n act of juvenile delinquency is not a crime." *Id.* at 229. The panel also reasoned that "there [was] no evidence [the child was] a fugitive from justice" because the term applies to a person "who has been charged with criminal activity in one state and flees from that jurisdiction to another state." *Id.* To

support the interstate flight requirement it adopted, the panel cited two cases dealing with extradition proceedings. *See Hogan v. O'Neill*, 255 U.S. 52, 56 (1921); *Hartman v. Aveline*, 63 Ind. 344, 352 (Ind. 1878).

[11] In 2002, our Court decided *Myers v. State*. Myers was charged with assisting a criminal for harboring his secretary who had been charged with forging a check in Myers' name. 765 N.E.2d at 664-65. The charging information specifically alleged the secretary was a fugitive from justice. *Id.* at 665. After Myers was convicted, he appealed whether there was sufficient evidence to support his conviction. The appellate panel observed "the State was required to show that [the secretary] had been charged with the crime of forgery in Indiana and that she had fled from Indiana to another state." *Id.* at 667. Because the evidence showed the secretary moved to Florida after forging the check and then returned to live with Myers, the Court found she was a fugitive from justice. *Id.* at 667-68.

[12] Finally, in *Lafferty v. State*, Lafferty appealed the trial court's failure to provide a jury instruction consistent with the definition of fugitive from justice given in *Frost* and *Myers*. 899 N.E.2d 683, 685 (Ind. Ct. App. 2009). The State, as it contends in this case, argued *Frost* and *Myers* "were wrongly decided because the authority cited . . . in support of the definition concerned the application of extradition statutes." *Id.* The panel rejected that argument, reasoning "the State overlook[ed] . . . the alternative charging language contained in the statute." *Id.* The panel proceeded to find that

> [t]he plain, usual and ordinary meaning of the phrase "person who has committed a crime" is that it refers to a person who has committed a criminal offense as defined by statute, whether or not that person has been formally charged with the offense. Furthermore, the legislature used the disjunctive "or" when it included fugitives from justice within the statutory prohibition. Use of the disjunctive normally creates a separate or distinct category of persons.

*Id.* Though the panel noted that its research had not "disclose[d] any Indiana case questioning or challenging the *Frost* definition[,]" it did not engage in any freestanding consideration of the interstate flight requirement. *Id.* at 685 n.1. Because the panel found the trial court erred by failing to give the jury instruction and the State produced no evidence the person Lafferty assisted had fled the state, it reversed her conviction. *Id.* at 685-86.

[13] Relying on this trio of cases, Burton argues his conviction must be reversed because the State produced no evidence Graham fled Indiana while she had an active warrant. *See* Appellant's Reply Br. at 8 (emphasizing the nearly forty-year "unbroken line of precedent" requiring proof of interstate flight). In contrast, the State asks us to abandon the interstate flight requirement, asserting it is contrary to the plain meaning of the term "fugitive from justice." *See* Appellee's Br. at 9 (arguing the *Frost* panel merely "graft[ed] extradition law onto [the] statute"). Both parties contend the term is unambiguous in their favor.

[14] Preliminarily, the State correctly points out that Indiana does not follow horizontal stare decisis, meaning "each panel of this Court has coequal

authority on an issue and considers any previous decisions by other panels but is not *bound* by those decisions." *Brown v. Charles Sturdevant Post of Am. Legion Post #46*, 270 N.E.3d 962, 969 (Ind. Ct. App. 2025) (quoting *In re C.F.*, 911 N.E.2d 657, 658 (Ind. Ct. App. 2009)). That said, because continuity and predictability are important features of our jurisprudence, the doctrine of stare decisis is considered "especially compelling in matters of statutory interpretation." *Ladra v. State*, 177 N.E.3d 412, 420 (Ind. 2021) (quoting *Myers v. Crouse-Hinds Div. of Cooper Indus.*, 53 N.E.3d 1160, 1163 (Ind. 2016), *reh'g denied*). Accordingly, "we must follow the previous decisions of this Court construing a statute unless provided with a strong reason justifying departure." *Montgomery v. State*, 250 N.E.3d 478, 483 (Ind. Ct. App. 2024), *trans. denied*.

[15] Citing various dictionary definitions, the State contends "[t]he plain and ordinary meaning of the phrase ["fugitive from justice"] applies to anyone who evades, flees, or hides from officials charged with the administration of the laws to fairly judge cases, redress wrongs, or punish crimes." Appellee's Br. at 11. Because Burton only challenges his conviction on grounds that proof of Graham's interstate flight was required, we focus our attention there. The State references the following definitions:

> A "fugitive" is one who is "running away or intending flight (as from an enemy, a master, duty, or justice)." Webster's International Dictionary, 918 (3rd ed. 1993); *see also* Webster's New International Dictionary, 1016 (2nd ed. 1949) ("one who flees from pursuit, danger, service"). Merriam-Webster's online dictionary defines "fugitive" as a "person who flees or tries to escape: such as . . . [b] a person (such as a suspect, witness, or

defendant) involved in a criminal case who tries to elude law enforcement especially by fleeing the jurisdiction. . . . called also fugitive from justice."

Appellee's Br. at 10-11.

[16] Other general-language dictionaries define "fugitive" or "fugitive from justice" similarly. *See Fugitive*, DICTIONARY.COM, https://www.dictionary.com/browse/fugitive [https://perma.cc/4JQU-NAU5] ("a person who is fleeing, as from prosecution, intolerable circumstances, etc.; a runaway"); *Fugitive from justice*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/dictionary/english/fugitive-from-justice [https://perma.cc/TQF3-44XV] ("someone who runs away or hides from the police in order to avoid appearing in court or going to prison"); *Fugitive*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://ahdictionary.com/word/search.html?q=fugitive [https://perma.cc/NA6E-Y5XM] ("A person who flees, especially from a legal process, persecution, or danger.").

[17] Burton replies that "*Frost* and its progeny are entirely consistent with the common and ordinary meaning of 'fugitive from justice.'" Appellant's Reply Br. at 7 (emphasizing that some common definitions note flight from the

jurisdiction is "especially" common to the meaning of "fugitive").[5]  He also speculates that the Legislature "intended to import th[e] technical meaning" that the term has had "in criminal extradition law for over one hundred fifty years."  *Id.* at 8.  However, a technical "term of art is . . . one which is used in a particular field with a precise and technical meaning."  *Johnson Cnty. Farm Bureau Co-op. Ass'n v. Ind. Dep't of State Revenue*, 568 N.E.2d 578, 583 n.1 (Ind. T.C. 1991) (quoting *Ind. Dep't of State Revenue v. Food Mktg. Corp.*, 403 N.E.2d 1093, 1098 (Ind. Ct. App. 1980) (Staton, J. dissenting), *reh'g denied*), *aff'd and adopted by* 585 N.E.2d 1336 (Ind. 1992)).  Burton fails to explain why "fugitive from justice"—a term that may require interstate flight as used in the extradition context—carries the same meaning under the assisting a criminal statute.

[18]  Similarly, while the Legislature did not define "fugitive from justice" in section 35-44.1-2-5, we know it could have narrowly defined the term to require interstate flight because it expressly did so in another statute.  Indiana Code section 35-47-2-1.5(b) prohibits certain persons, including fugitives from justice, from "knowingly or intentionally carry[ing] a handgun[.]"  For purposes of that statute only, the Legislature defined "fugitive from justice" as "any person who . . . flees or leaves any state to avoid prosecution for a felony or misdemeanor offense[] or . . . flees or leaves any state to avoid testifying in a criminal

---

[5] *See Fugitive*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp[ecially] by fleeing the jurisdiction or by hiding.").

proceeding." I.C. § 35-47-2-1.5(a)(6). "While definitions of similar terms in other statutes are 'entitled to consideration' and can provide helpful context or guidance, courts must be mindful to 'resist the temptation to import' a definition from another part of the Indiana Code[.]" *IBEW Local 305*, __ N.E.3d at __, 2026 WL 710301, at *5 (first quoting *Allen v. Allen*, 54 N.E.3d 344, 347 (Ind. 2016) and then quoting *Rainbow Realty*, 131 N.E.3d at 174). Indeed, "[t]he use of narrow, targeted, or context-specific definitions" of a term in one area of the Code may imply that the term "carries its ordinary and usual meaning [elsewhere] in the absence of narrowing language." *Id.* at *6 (assigning "school" its plain definition under the predominant-use statute despite narrow definitions of the word elsewhere in the Code). As Indiana's statute restricting handgun possession prohibits certain individuals from exercising the constitutional right to carry a handgun, *see New York Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 8 (2022), it is understandable why the Legislature would define the restricted class narrowly. The same cannot be said of Indiana's assisting a criminal statute which seeks to criminalize assistance to those who have committed crimes or otherwise evaded justice.

[19] Because we find nothing indicating the Legislature intended a technical or narrow definition of "fugitive from justice" to apply in this context, the plain language must control. Applying its plain meaning, the term is unambiguous in that it is *not limited* to situations when a person flees the jurisdiction. The Pennsylvania Supreme Court provided persuasive reasoning and reached the same conclusion when it considered a firearm possession statute that left

"fugitive from justice" undefined. In *Commonwealth v. Smith*, the court "consider[ed] whether a person who is subject to a bench warrant is a 'fugitive from justice' such that he is a 'person not to possess, use, control, sell, transfer or manufacture' a firearm . . . ." 234 A.3d 576, 579 (Pa. 2020). As in this case, the parties disputed whether interstate flight was required. *Id.* at 581-82. After reviewing some of the same dictionary definitions put forth here, the court concluded it was not:

> The foregoing definitions make clear that the terms "fugitive" and "fugitive from justice" are synonymous for our present purposes and include someone who evades the law or prosecution, and/or an individual in a criminal case who simply eludes law enforcement. . . . [A] bench warrant issues only when an individual does not appear when required, and thus acts to elude or evade law enforcement or prosecution. It logically follows that an individual who evades law enforcement such that a bench warrant is issued — as appellant stipulated to doing here — is a fugitive as that term is commonly defined.

> We reject appellant's related argument he cannot be a "fugitive from justice" when he was merely sitting in a van in his hometown rather than "fleeing" from the authorities. Although one may be a "fugitive" "by fleeing the jurisdiction or hiding," these are clearly not the exclusive means by which one qualifies as a fugitive.

*Id.* at 585-86; *see also United States v. Bailey*, 444 U.S. 394, 414 n.10 (1980) (considering defendants' convictions under a federal escape-from-custody statute and noting that "an escaped prisoner is, by definition, a fugitive from justice").

[20] Finally, the doctrine of legislative acquiescence does not compel continued adherence to the interstate flight requirement that was promulgated in *Frost*. *See* Appellant's Br. at 13 ("Our legislature has implicitly acquiesced, if not embraced *Frost*, *Myers*, and *Lafferty*."). Legislative acquiescence is the proposition that "judicial interpretation of a statute, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the Legislature's acquiescence in and agreement with the judicial interpretation." *Montgomery*, 250 N.E.3d at 483. In addition to the fact that our Supreme Court has yet to consider the interstate flight requirement in this context—either directly or through a petition to transfer—it has held that the doctrine of legislative acquiescence is "irrelevant" when the plain language controls the interpretive analysis, as it does here. *State v. S.T.*, 82 N.E.3d 257, 261 (Ind. 2017) ("[W]e stress again that the hierarchy of interpretive principles moots the concept of legislative acquiescence—the clear statutory language makes it unnecessary to resort to other statutory construction rules." (quoting *Jackson v. State*, 50 N.E.3d 767, 775 (Ind. 2016))) (alteration in original), *as modified*.

## Conclusion

[21] For the foregoing reasons, we conclude that the plain language of "fugitive from justice" justifies departing from *Frost*, *Myers*, and *Lafferty* and hold that the assisting a criminal statute does not require proof of the assisted party's interstate flight when the State charges a defendant with having assisted a fugitive from justice. Thus, we affirm Burton's conviction.

Affirmed.

Altice, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman & Garrison Law
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana